IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JANET A. FILES,

    Plaintiff,

v.             Civil Action No. 3:04-CV-69

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

## <u>MEMORANDUM, OPINION, and REPORT AND RECOMMENDATION</u><br><u>SOCIAL SECURITY</u>

### I. Introduction

A. <u>Background</u>

 Plaintiff, Janet A. Files, (Claimant), filed her Complaint on August 19, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on October 28, 2004.[2] Claimant filed her Motion for Summary Judgment and Brief in Support Thereof on November, 24, 2004.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on December 9, 2004.[4]

B. <u>The Pleadings</u>

   1. <u>Claimant's Motion for Summary Judgment and Brief in Support Thereof</u>.

---

[1] Docket No. 1.

[2] Docket No. 2.

[3] Docket No. 3.

[4] Docket No. 4.

2. <u>Commissioner's Motion for Summary Judgment and Brief in Support Thereof</u>.

C.     <u>Recommendation</u>

1.     I recommend that Claimant's Motion for Summary Judgment be DENIED in part because the ALJ gave proper weight to the opinion of Claimant's treating physician. Also, I recommend that this case be REMANDED for the ALJ to properly assess Claimant's subjective complaints of pain in accordance with <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996). In addition, because a Residual Functional Capacity Assessment is in part based on Claimant's credibility the ALJ should also reassess Claimant's Residual Functioning Capacity.

## II. Facts

A.     <u>Procedural History</u>

On October 1, 2002 Claimant filed for Disability Insurance Benefits (DIB) alleging disability since August 1, 1998. The application was denied initially and on reconsideration. A hearing was held on April 1, 2004 before an ALJ. The ALJ's decision dated May 11, 2004 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on June 24, 2004. This action was filed and proceeded as set forth above.

B.     <u>Personal History</u>

Claimant was 51 years old on the date of the April 1, 2004 hearing before the ALJ. Claimant has the equivalent of a high school education and past relevant work experience as a heavy equipment and cable assembly worker.

C.     <u>Medical History</u>

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability August 1, 1998- May 11, 2004:

**Washington County Hospital Association**
**Neil P. O'Malley, M.D. 3/7/98 Tr. 99**
- Impression: Worsen lumbar radiculopathy with a known disc herniation.

**Washington County Hospital**
**Robert Mazzei, D.O. 11/12/02 Tr. 101**
- Impression: L4/5 disc space localization during lumbar laminectoy.

**Washington County Hospital Association**
**Neil P O'Malley, M.D. 3/7/98 Tr. 102**
- Preoperative Diagnosis: Left L4/5 bilateral disc herniation with nerve root impingement and radiculopathy.
- Postoperative Diagnosis: Same.

**Belvedere Medical Center**
**David C. Baker, M.D.  1/22/99 Tr. 112.**
- Impression: Mechanical instability, L4-L5. I believe this is related to a work injury.

**Washington County Hospital**
**Kerri Hensley, M.D. 11/12/02 Tr. 114.**
- Conclusion: Previous left surgery L4/5 with abnormal signal in the left foramen and canal probably representing scar given its appearance on the last study, and the lack of left sided symptoms.
- Conclusion: Right mild foraminal narrowing at L4/5 and bilateral foraminal stenosis L5/S1 similar to that seen previously. No new findings.

**Washington County Hospital**
**Paul C. Marinelli, M.D. 11/12/02 Tr. 116**
- Impression: Post surgical changes at L4/5 with no definite residual or recurrent disc herniation; at L5/S1, there is diffuse disc bulging with a small central protrusion present; the changes are the result in bilateral foraminal stenosis which is slightly greater on the right than the left; there are post-surgical changes at the L4/5 level; there is most likely a transitional vertebra present.

**Washington County Hospital Association**
**Michael G. Radley M.D. 3/5/98 Tr. 118**
- Impression: At L5/S1, there is a central disc herniation abutting the S1 nerve roots bilaterally; at L4/5, there is a mild disc bulge. No other lumbar disc herniation or lumbar spinal stenosis is noted.

**Washington County Hospital Association**
**Robert E. Mazzei, D.O. 3/5/98 Tr. 120**
• Impression: No radiopaque foreign bodies, probable left maxillary sinusitis.

**Neurosurgical Specialists, LLC**
**Neil P. O'Malley, M.D. 9/17/01 Tr. 127.**
• Data Review: I reviewed the films again showing no significant lesion that could account for her current symptoms.
• Management Options: I feel that her pain is myofascial in nature emanating from the sacroiliac joint.

**Neurosurgical Specialists, LLC**
**Neil P. O'Malley, M.D. 8/13/01 Tr. 128.**
• Data Review: I reviewed a new MRI to see if this might reveal a right-sided L5/S1 disc herniation. This shows no evidence of any significant right-sided problem. There is no right-sided disc herniation at L4/5. There are some postoperative changes and scar tissue on the left side at L4/5

**Neurosurgical Specialists, LLC**
**Neil P. O'Malley, M.D. 7/6/01 Tr. 129.**
• Data Review: She brings no new films with her at this time with the exception of a set of plain x-rays. This reveals a small spndylolisthesis at the L4/5 level of a grade 1 nature.

**Neurosurgical Specialists, LLC**
**Neil P. O'Malley, M.D. 12/16/98**
• I do not feel that her problem is surgical at this time. I will see her back following Dr. Yacyk and/or Dr. Sullivan's evaluation on a prn basis.

**Total Rehab Care at Robinwood**
**Neil O'Malley M.D. 11/12/02 Tr. 140**
• Assessment: Patient is 49 year old female with history of LBP since '98.
• LBP started on left side and now patient has right sided symptoms.
• Pain radiates from right lumbar paraspinals to gluteal region and sometimes the quads.
• Mild decrease in overall LE strength.
• Palpable pain along the gluteal region on the right is most sensitive.
• Tightness noted in painful area.

**Washington County Hospital**
**Mark J. Yacyk 6/5/02 Tr. 155**
• Impression: Limited images of the lumbar spine demonstrating needle placement for radio-frequency pain procedure.

**City Hospital Radiology Services**
**John Blanco, M.D. 12/10/02 Tr. 157**

- Impression: Minimal degenerative disc disease at L4-L5.

**Physical Medical Specialists**
**Daniel J. Sullivan, D.O. 3/5/03 Tr. 159.**
- Impression: Chronic back pain that appears to have a mechanical component, as well as a neuropathic component.

**Physical Medical Specialists**
**Daniel J. Sullivan, D.O. 3/21/03 Tr. 160.**
- Impression: Radicular leg pain, sleep disorder.

**John Warfield, M.D. 4/4/01 Tr. 168.**
- Impression: Evidence of probable disc disease and previous surgery L4-5, no other findings.

**5/28/00 Tr. 170.**
- Assessment: Chronic sciatica/SI pain

**2/5/99 Tr. 172.**
- Assessment: Right SI dysfunction resulting in some mild to moderate reactive spasms.

**West Virginia Disability Determination Service**
**Kip Beard, M.D. 2/3/03 Tr. 176.**
- Status post lumbar surgery in 1998 for left lumbar radiculopathy.
- Chronic lower back pain.
- Chronic lumbar myofascial pain, superimposed upon post surgical changes and degenerative disc and joint disease with evidence of mild residual left lumbar radiculopathy.

**Physical Residual Functional Capacity Assessment**
**Thomas (illegible) 2/5/03 Tr. 178-185**
- Exertional limitations: occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: None established.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: Avoid concentrated exposure to extreme cold. All others unlimited.
- Impression: Status post lumbar surgery in '98 for left lumbar radiculopathy. Chronic lower back pain.

**Physical Residual Functional Capacity Assessment**
**Hugh M. Brown, M.D. 6/12/03 Tr. 195 - 202.**

- Extertional limitations: Occasionally 20 lbs., frequently 10 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: Occasionally limited to climbing, balancing, stooping, kneeling, crouching and crawling.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: None established.

**Psychiatric Review Technique**
**Samuel Goots, Ph.D. 6/12/03 Tr. 203**
- Medical Disposition: No medically determinable impairment

**Physical Medicine Specialists**
**Mara Vucich, D.O. 9/17/03 Tr. 220**
- Assessment: Failed back syndrome status post left epidural injection in July, insomnia - improved with Ambien, new onset of abdominal pain with esophagitis

**7/22/03 Tr. 222**
- Assessment: Status post back surgery secondary to work injury, with continued back pain and radicular pain.
- Insomnia related to the above but improved with Ambien.
- Improvement status post epidural injection.
- Constipation related to chronic narcotic use.

**Cumberland Regional MRI Center**
**G. Michael Dwyer, M.D. Tr. 224.**
- Impression: Normal MRI of the brain.

**Physical Residual Functional Capacity Questionnaire**
**Mark Yacyk, M.D. 9/28/04 Tr. 225-228**
- Psychological Conditions affecting Patient: Depression, somatoform disorder, anxiety and psychological factors affecting physical condition.
- Patient's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation.
- Patient experiences constant pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks.
- Work evaluation: Sit for 30 minutes, stand for 30 minutes. in eight hour work day patient could sit for 4 hours, stand for 4 hours with normal breaks.
- Patient will require a 5 minute break to walk during a normal work day every 45 minutes.


D.    Testimonial Evidence
1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 239-40, 242-43):

A  It did help my left leg, but it left it numb.

Q  Okay. And - -

A  Partially numb, half of it.

Q  - - you still have problems with your left leg?

A  It's just slow.

Q  How does that affect your ability to walk and stand?

A  I get - - I can't stand for very long because it - - really, my legs don't feel like they want to hold me.

Q  Well, how long is too long for you?

A  I usually sit down about every half an hour.

Q  Do you still have pain?

A  Yes, but the pain is on my right side now.

Q  When did you start getting pain on the right side?

A  Right after surgery for my back.

Q  And where is the pain on the right side?

A  Now it's in my back, my right hip and right leg, down to my knee. The big muscle in my leg and down, plus my back. It's - -

*    *    *

Q  Do you have any problems with changes in weather or temperature?

A  When it's cold.

Q  What happens when it's cold?

A       I'm really - - the stiffness - - my hands have been getting stiff.  I don't know what

- - why they're so stiff.  And my ankles and feets [sic] and my back - - it's just - - I don't know if

it's the weather or just something - - condition is changing on me.

*          *          *

A       I think I was supposed to have a torn something.  A [INAUDIBLE] cup or

something in it.

Q       How about a torn rotator cuff?

A       That's about it, I think.

Q       How does that affect your use of your right - -

A       I can't - -

Q       - - arm?

A       - - use it very well right now.  It - -

Q       Are - -

A       - - just - - the - - this started like a month or so ago really hurting.

*          *          *

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr.

246-47):

Q       Assume that a hypothetical person with a - - has the same age, education and

work experience as the Claimant, and who has the capacity to do light work, unskilled, with a

sit/stand option and limited general public contact.  Can you identify any jobs that such a

hypothetical person can perform on a sustained basis, and which jobs exist in significant

numbers in the national economy?

A     Yes, Your Honor.  From the light, unskilled occupational base, I offer the following examples.  The position of machine tender.  In the United States, there are 62,000 of these positions.  In the local economy - - I defined the local economy as an area comprising north central Virginia, to include the adjacent portions of West Virginia, Maryland and Washington, D.C.  In that local area, 1,700 of these positions are in existence.  Second example would be that of packer and packing worker.  Nationally, 47,000 exist.  In the local economy, 1,100 of these positions exist.  And a third example would be that of appointment - - I'm sorry.  Strike that.  Assembly worker.  Nationally, 62,000 exist, and in the local economy, 1,800.  I offer these are examples only, Your Honor.  This is not intended to be an exhaustive list.

Q     In your professional judgment, would the [INAUDIBLE] to advance the hypothetical be essentially the same or different under the <u>Dictionary of Occupational Titles</u>, and if your conclusions were to change, how and what would those changes be based on?

A     Your Honor, my testimony is consistent with the <u>Dictionary of Occupational Titles</u>.

*          *          *

E.     <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

•     Is able to read, write and do simple mathematics. (Tr. 236).

•     Drives a car, stopping every so often. (Tr. 237).

- Cooks small meals and does laundry. (Tr. 237).

- Shops for groceries with the help of someone else. (Tr. 238).

- Takes care of a cow and a dog. (Tr. 238).

- Takes walks outside. (Tr. 238).

## II. The Motions for Summary Judgment

### A.   Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ failed to give proper weight to the opinion of Claimant's treating physician. Also, Claimant contends that the ALJ erred when he assessed Claimant's subjective complaints of pain. Lastly, Claimant maintains that the ALJ improperly determined Claimant's residual functioning capacity (RFC).

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ gave proper weight to the opinion of Claimant's treating physician, Dr. Yacyk. Also, Commissioner asserts that the ALJ properly assessed Claimant's subjective complaints of pain. Lastly, Commissioner maintains that the ALJ properly determined Claimant's RFC.

### B.   The Standards.

1.   Summary Judgment.   Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.  Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.  Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.  Social Security - Medically Determinable Impairment. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.  Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.  Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether

the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10. Evidence - Weight. The ALJ is required to indicate the weight given to all relevant

evidence. <u>Gordon v. Schweiker</u>, 725 F.2d 231 (4th Cir. 1984). However, the ALJ is not required to discuss every piece of evidence. <u>Green v. Shalala</u>, 51 F.3d 96, 101 (7th Cir. 1995).

11.      <u>Social Security - Treating Physician - Controlling Weight</u> - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). <u>See also</u> <u>Evans v. Heckler</u>, 734 F.2d 1012 (4th Cir. 1984); <u>Heckler v. Campbell</u>, 461 U.S. 458, 461 (1983); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990).

12.      <u>Social Security - Residual Functional Capacity</u>. A Residual Functional Capacity is what Claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. Residual Functional Capacity is an assessment based upon all of the relevant evidence. <u>Id.</u> It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. <u>Id.</u> Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. <u>Id.</u> These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities. <u>Id.</u> This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments. <u>Id.</u>

13.      <u>Social Security - Claimant's Credibility - Pain Analysis</u>. The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an

impairment capable of causing the degree and type of pain alleged.  Second, once this threshold

determination has been made, the ALJ must consider the credibility of her subjective allegations of

pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

C.    Discussion

### 1. Opinion of Treating Physician

Claimant asserts that the ALJ failed to give proper weight to the opinion of Claimant's

treating physician, Dr. Yacyk.  Commissioner counters that the ALJ gave proper weight to Dr.

Yacyk's opinion.

Whether an individual is disabled or able to work is an issue reserved for the

Commissioner. SSR 96-5p. Opinions as to disability or ability to work given by a treating source

can "never ben entitled to controlling weight or given special significance." Id.  Dr. Yacyk opined

that Claimant "is incapable of tolerating even low stress work." (Tr. 21). Dr. Yacyk's opinion that

Claimant is incapable of tolerating even low stress work is not entitled to controlling weight

because it is an issue left to the Commissioner.

The opinion of a treating physician will be given controlling weight if the opinion is 1)

well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not

inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2). While

credibility of the opinions of the treating physician is entitled to great weight, it will be

disregarded if there is persuasive contradictory evidence.  Evans v. Heckler, 734 F.2d 1012 (4th

Cir. 1984).

In the present case, the Claimant's argument that the ALJ erred in not giving Dr. Yacyk's

opinion controlling weight is without merit.  Dr. Yacyk's opinion is not supported by any

medically acceptable clinical or laboratory evidence. As the ALJ stated "Little weight was given to [the] opinion of Dr. Yacyk, at Exhibit 18F, because his opinion is not supported by objective medical evidence such as progress reports, findings on physical examination(s) or clinical and laboratory diagnostic techniques." (Tr. 23). Also, Dr. Yacyk's opinion is inconsistent with other substantial evidence in the case record. Dr. Baker opined that "the claimant cannot do heavy work but she can do very light work." (Tr. 23). Dr. Baker's opinion was supported with findings on physical examination and X-ray results. Also, a State medical consultant "opined that the claimant was able to perform medium level work" and that the Claimant "had not established any other limitations including postural limitations, except she should avoid concentrated exposure to extreme cold." (Tr. 20). In addition, Dr. Brown, determined that "the claimant was able to perform light level work. The medical examiner found that the claimant had not established any other limitations, except the claimant could occasionally perform postural movements." (Tr. 20). Dr. Yacyk's opinion was not supported by well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the case record. Therefore the ALJ properly gave lighter weight to Dr. Yacky's opinion.

## 2. Subjective Complaints of Pain

Claimant asserts that the ALJ failed to properly assess Claimant's subjective complaints of pain. Commissioner counters that the ALJ properly assessed Claimant's subjective complaints of pain.

The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged.

Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

The ALJ stated that [i]n light of the objective medical evidence and other evidence of record, the undersigned finds that the claimant's allegations of pain and other subjective symptoms, and the limitations arising there from are credible only to the extent of the residual functional capacity determined." (Tr. 22). The ALJ did not expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Therefore, I recommend that this case be REMANDED for the ALJ to properly assess Claimant's subjective complaints of pain in accordance with Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

### 3. Residual Functioning Capacity

Claimant asserts that the ALJ erred in determining Claimant's Residual Functioning Capacity. (RFC). She claims that the RFC is not based on substantial evidence of the record nor is the ALJ's explanation sufficiently specific. Commissioner counters that the ALJ had sufficient evidence to properly determine Claimant's RFC.

A Residual Functional Capacity is what Claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. Residual Functional Capacity is an assessment based upon all of the relevant evidence. Id. It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition. Id. Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. Id. These descriptions and observations

must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities. Id.

A Claimant's RFC is in part based on the Claimant's credibility. Based on the above recommendation that this case be remanded for the ALJ to properly consider Claimant's credibility in accordance with Craig v. Chater, 76 F.3d 585 (4th Cir. 1996) the ALJ should also thereafter reassess Claimant's Residual Functioning Capacity.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED in part because the ALJ gave proper weight to the opinion of Claimant's treating physician. Also, I recommend that this case be REMANDED for the ALJ to properly assess Claimant's subjective complaints of pain in accordance with Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). In addition, because a Residual Functional Capacity Assessment is in part based on Claimant's credibility the ALJ should also reassess Claimant's Residual Functioning Capacity.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 3, 2005


/s/ James E. Seibert

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE